## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 15 2016, 9:04 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:

B.A. (Minor Child),

and,

D.L. (Father),

March 15, 2016

Court of Appeals Cause No.
21A01-1509-JT-1559

Appeal from the Fayette Circuit Court

The Honorable Beth Butsch, Judge

Trial Court Cause No.
21C01-1505-JT-117

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitiner.*

**Barnes, Judge.**

# Case Summary

D.L. ("Father") appeals the termination of his parental rights to B.A.  We affirm.

# Issues

Father raises two issues, which we restate as:

    I.      whether the trial court properly found that there is a reasonable probability that the conditions resulting in B.A.'s removal will not be remedied; and

    II.    whether the trial court properly found that termination of Father's parental rights was in B.A.'s best interests.

# Facts

B.A. was born in December 2012 to Father and A.A. ("Mother").  B.A. came to the attention of the Department of Child Services ("DCS") due to Mother's and Father's problems with drug addiction.  At that time, Mother and Father

lived together with B.A. In May 2013, Mother and Father entered into an informal adjustment to address their drug addictions and lack of stable housing and income. Mother continued to abuse drugs and became homeless. Father did not participate in services, except that he took drug screens when the family case manager was able to locate him. Father continued to abuse drugs and tested positive for marijuana, opiates, benzodiazepines, 6-acetylmorphine, hydromorphone, morphine, methamphetamine, xanax, diazepam, methadone, amphetamine, and EDDP.

[4] Due to Mother's and Father's lack of progress, DCS removed B.A. from Mother's care in August 2013, and filed a petition alleging that B.A. was a child in need of services ("CHINS"), which the trial court later granted. At the time, Father was incarcerated and charged with "three A felony dealing charges, a C forgery charge, a C fraudulent charge, and a D theft." Tr. p. 6. In September 2013, DNA testing established Father's paternity of B.A. Father was ultimately convicted of two counts of Class C felony forgery, Class D felony theft, and was found to be an habitual offender. Father also had a 2010 conviction for Class D felony possession of a controlled substance.[1] Father expects to be released from incarceration in August 2018.

---

[1] The State indicates that Father also has a 2014 conviction for Class B felony dealing in cocaine or a narcotic drug. However, evidence concerning this conviction was not presented at the termination hearing. As a result, we do not consider that conviction.

DCS filed a petition to terminate Mother's and Father's parental rights. Mother voluntarily terminated her parental rights. After an evidentiary hearing, the trial court terminated Father's parental rights. Father now appeals.

## Analysis

Father challenges the termination of his parental rights to B.A. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). "Indeed the parent-child relationship is 'one of the most valued relationships in our culture.'" *Id.* (quoting *Neal v. DeKalb County Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003)). We recognize of course that parental interests are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *Id.* Thus, "'[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.'" *Id.* (quoting *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*).

When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *Id.* We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* We must also give "due regard" to the trial court's unique opportunity to judge the

credibility of the witnesses. *Id.* (quoting Ind. Trial Rule 52(A)). Here, the trial court entered findings of fact and conclusions thereon in granting DCS's petition to terminate Father's parental rights. When reviewing findings of fact and conclusions thereon entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *Id.* We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[8] Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship." Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

> (B)     that one (1) of the following is true:
>
>> (i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)   The child has, on two (2) separate occasions,
        been adjudicated a child in need of services;

(C)   that termination is in the best interests of the child;
      and

(D)   that there is a satisfactory plan for the care and
      treatment of the child.

DCS must establish these allegations by clear and convincing evidence. *Egly v. Blackford County Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1234 (Ind. 1992).

## I. Changed Conditions

Father first argues that the trial court's conclusion that the conditions that resulted in B.A.'s removal will not be remedied is clearly erroneous.[2] In making this determination, the trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing and take into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. However, the trial court must also "evaluate the parent's

---

[2] Father also argues that the trial court's conclusion that the continuation of the parent-child relationship poses a threat to the well-being of B.A. is clearly erroneous. Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive. Subsection (b)(2)(B)(iii), which concerns repeated CHINS adjudications, is inapplicable here. Consequently, DCS was required to demonstrate by clear and convincing evidence a reasonable probability that either: (1) the conditions that resulted in B.A.'s removal or the reasons for placement outside the home of the parents will not be remedied, or (2) the continuation of the parent-child relationship poses a threat to the well-being of B.A. The trial court found a reasonable probability that the conditions that resulted in B.A.'s removal and continued placement outside Father's home would not be remedied, and there is sufficient evidence in the record to support the trial court's conclusion. Thus, we need not determine whether there was a reasonable probability that the continuation of the parent-child relationship poses a threat to B.A.'s well-being. *See, e.g., Bester v. Lake County Office of Family & Children*, 839 N.E.2d 143, 148 n.5 (Ind. 2005); *In re T.F.*, 743 N.E.2d 766, 774 (Ind. Ct. App. 2001), *trans. denied*.

habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.*

[10] Father argues that his attitudes and behaviors have changed after he realized that he had a child. Father contends that his ability to participate in services has been limited due to his incarceration, but he points to his participation in the PLUS program at the Department of Correction. In support of his argument, Father relies on two recent opinions that reversed the termination of parental rights of an incarcerated parent. *See In re J.M.*, 908 N.E.2d 191 (Ind. 2009), and *In re G.Y.*, 904 N.E.2d 1257 (Ind. 2009). In *J.M.*, 908 N.E.2d at 194-96, the parents were arrested on dealing in methamphetamine charges, and their four-year-old child was placed in the care of relatives and later in foster care. The trial court denied DCS's petition to terminate the parents' parental rights. Our supreme court affirmed and noted that parents' probable release dates were "close in time," the parents had a relationship with the child prior to their imprisonment, parents had fully cooperated with services, and the father had secured housing and employment. *J.M.*, 908 N.E.2d at 195. Similarly, in *G.Y.*, 904 N.E.2d at 1261-65, our supreme court reversed the termination of a mother's parental rights where, although she was incarcerated, her crimes were committed prior to the child's birth, she took several classes in prison to better herself, she had a positive and consistent relationship with the child, she had made employment and housing plans for after her release, and her release from prison was imminent.

[11] *G.Y.* and *J.M.* are distinguishable from this situation. Unlike in *G.Y.* or *J.M.*, Father has no relationship or bond with B.A. Father only spent two to four months with B.A. prior to his incarceration, and B.A. was an infant at that time. Although Father's available services were limited by his incarceration, the family case manager did not receive any documentation or proof that he participated in the services that were available at the jail. However, Father testified that he started participating in the PLUS program shortly before the termination hearing. Father is scheduled to be released from incarceration in August 2018. At that time, B.A. will be five and one-half years old. Father also has a significant drug addiction and a substantial criminal history. Even after Father is released from incarceration, he would have to demonstrate that he was able to parent B.A. Given Father's incarceration, uncertain future, lack of a relationship with B.A., criminal history, and drug addiction history, we cannot say that the trial court's conclusion that the conditions resulting in the B.A.'s removal will not be remedied is clearly erroneous.

## II. Best Interests

[12] Next, Father challenges the trial court's conclusion that termination is in B.A.'s best interests. In determining what is in the best interests of a child, the trial court is required to look at the totality of the evidence. *D.D.*, 804 N.E.2d at 267. In doing so, the trial court must subordinate the interests of the parents to those of the child involved. *Id.*

[13] Father acknowledges that B.A. is stable in his pre-adoptive foster care but argues that his parental rights to B.A. should not be terminated "just because

Father is incarcerated."[3] Appellant's Br. p. 18. However, Father's parental rights were not terminated "just because of his incarceration." Rather, the totality of the evidence revealed that Father had a significant drug addiction problem, a significant criminal history, and no relationship or bond with B.A. The CASA testified that termination of Father's parental rights was in B.A.'s best interests, and the family case manager recommended termination of Father's parental rights due to B.A.'s need for permanency and Father's history. Even Father recognized during his testimony at the termination hearing that it would not be good for B.A. to get attached to someone and "get jerked away." Tr. p. 40. Given the lack of a relationship between Father and B.A., B.A.'s current stable placement, and Father's history of drug abuse and criminal activity, we cannot say that the trial court's finding that termination was in B.A.'s best interests is clearly erroneous.

---

[3] The State correctly notes that Father erroneously argues "the trial court must consider the totality of the evidence and determine whether custody by the parent is *wholly inadequate* for the child's future physical, mental, and social growth." Appellant's Br. p. 16 (citing *In re A.K.*, 924 N.E.2d 212, 233 (Ind. Ct. App. 2010) (emphasis added). The "wholly inadequate" language is not found in *A.K.* In fact, our supreme court has held:

> Clear and convincing evidence need not reveal that "the continued custody of the parents is wholly inadequate for the child's very survival." *Egly v. Blackford County Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1233 (Ind. 1992). Rather, it is sufficient to show by clear and convincing evidence that "the child's emotional and physical development are threatened" by the respondent parent's custody.

*Bester*, 839 N.E.2d at 148.

# Conclusion

[14] The trial court's termination of Father's parental rights is not clearly erroneous. We affirm.

[15] Affirmed.

Robb, J., and Altice, J., concur.